## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILMINGTON SAVINGS FUND SOCIETY,
FSB AS OWNER TRUSTEE OF THE
RESIDENTIAL CREDIT OPPORTUNITIES
TRUST VII-A,

     Plaintiff,                          Case No. 1:22-cv-00380 LF-JHR

v.

THE ESTATE OF ROBIN M. MCCAFFERTY
(DECEASED), THE UNKNOWN HEIRS,
LEGATEES AND DEVISEES OF ROBIN M.
MCCAFFERTY (DECEASED), CITIBANK,
N.A., AND CAPITAL ONE BANK (USA)
N.A.,

     Defendants.

### PLAINTIFF'S MOTION FOR DEFAULT
### JUDGMENT TO FORECLOSE ON REAL ESTATE[1]

    COMES NOW Plaintiff Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VII-A (hereinafter "Wilmington Savings" or "Plaintiff") with its motion for default judgment on its claims brought on the promissory note and mortgage at issue in this lawsuit.  Plaintiff Wilmington Savings seeks only an in-rem judgment against the property at issue and not against any defendant personally.  Borrower Robin M. McCafferty ("Borrower" or "Decedent") passed away prior to the initiation of this action.

    The Estate of Robin M. McCafferty (deceased) and The Unknown Heirs, Legatees and Devisees of Robin M. McCafferty (deceased) have failed to file any responsive pleading contesting that they have defaulted on their contractual loan obligations under the respective note and Mortgage.  Defendant Capital One Bank (USA), N.A.—who may claim an interest in the involved

---

[1] To the extent that any of the Defendants cure their default, this motion is alternatively submitted as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

property pursuant to a Judgment entered February 21, 2012—is in default. As explained in more detail below, the four known surviving heirs of the Decedent, specifically her four siblings, have all disclaimed any interest in the real estate at issue in this action. *See* Doc. 1-3. Defendant Citibank, N.A.—who may claim an interest in the involved property pursuant to a Mortgage dated August 6, 2007—also filed a Disclaimer of Interest in Real Property on August 8, 2022. *See* Citibank, N.A.'s Disclaimer of Interest in Real Property, filed August 8, 2022 (Doc. 5).

Consequently, the Court should enter a default judgment against all Defendants who have not disclaimed and permit a foreclosure auction for the real estate at issue in the litigation to go forward.

## I.    STATEMENT OF MATERIAL FACTS

This case is a suit on a note and mortgage that Decedent Robin M. McCafferty executed regarding the property located at 1206 Christine St. NE, Albuquerque, New Mexico 87112 (hereinafter the "Property"). As outlined in the Complaint for Foreclosure, filed May 15, 2022 (Doc. 1) ("Complaint"), Decedent and any successor claiming an interest in the Property have failed to pay on the loan obligation over an extended period, conduct which amounts to a breach of the contractual obligations under the note and mortgage. In support of this Motion, Plaintiff presents the following undisputed material facts:

1.    On August 12, 2005, for good and valuable consideration, Borrower executed a promissory note ("Note") in favor of Wells Fargo Financial New Mexico, Inc. evidencing a debt in the principal sum of $97,245.67 with an adjustable interest rate from said date at the Note rate of 8.5500%. A true and correct copy of the Note is attached as Exhibit C to the Complaint. *See* Doc. 1-4.

2.    To secure payment of the Note, Borrower executed a corresponding Mortgage covering the Property, a Mortgage recorded on August 24, 2005. A true and correct copy of the

Mortgage is attached as Exhibit D to the Complaint. *See* Doc. 1-5. A full property description appears in Paragraph 19 of the Complaint and in the respective Mortgage. *See* Mortgage at 7.

3.      The original holder of the Note, Wells Fargo Financial New Mexico, Inc., indorsed in blank the Note corresponding to the Mortgage. *See* Doc. 1-4, at 2.

4.      All rights in the Mortgage covering the property at issue in this action have been assigned to Wilmington Savings as evidenced by the chain of mortgage assignments attached as Exhibit F to the Complaint. *See* Doc. 1-7.

5.      Since before the time this lawsuit was initiated, Plaintiff's counsel has been in possession of the original Note related to the loan obligation at issue in this lawsuit. *See* Declaration of Angela L. Aronow ¶¶ 3-4, filed May 16, 2022 (Doc. 1-6).

6.      Consequently, based on Wilmington Savings having in its possession the Note indorsed in blank and the assignment of all rights in the Note and Mortgage to Wilmington Savings, Wilmington Savings as the owner of the Note and Mortgage is the proper party to foreclose. *See* Docs. 1-4, 1-6, 1-7; *see also* Affidavit of Ron McMahan ¶¶ 4-5 (Exhibit 1 to this Motion) (stating how all rights in the Note and Mortgage have been transferred to Wilmington Savings).

7.      The Mortgage provides that if there is any default in the payment of loan installments, upon acceleration the entire principal sum with accrued interest shall become due and payable and the Mortgage may be foreclosed. *See* Mortgage ¶ 21, at 6.

8.      The loan obligation has been in default since on or about January 17, 2020, as neither Borrower nor any successor to her interest in the Property has paid the outstanding amounts owed on the Note and Mortgage since that time. *See* Affidavit of Ron McMahan ¶ 7.

9.      Notice of default and acceleration of the debt was mailed to the property address before institution of this foreclosure action, and the outstanding debt obligation has not been cured. *See id.* ¶ 8.

10.     After providing notice to the extent required by the Note and Mortgage, the entire unpaid principal balance of the Note has been declared as immediately due and payable in accordance with the terms and provisions of the Note and Mortgage.  *See* Affidavit of Ron McMahan ¶¶ 7-11.

11.     Decedent passed away on or about December 10, 2019.  *See* Obituary of Robin Marie McCafferty at 1, filed May 16, 2022 (Doc. 1-2).

12.     There is currently due to Plaintiff on the Mortgage the unpaid principal sum of $41,638.54, plus interest at the current rate of 7.0000% per annum from and including December 17, 2019 to December 6, 2022, forward, plus late charges, escrows, and advances, as provided by the Note and Mortgage.  As of December 6, 2022, interest in the amount of $7,465.94 was owed on the loan balance.  *See* Affidavit of Ron McMahan ¶ 9.

13.     Excluding attorney's fees and costs, the total amount owed to Plaintiff recoverable under the Note and Mortgage is $73,839.07 as of December 6, 2022.[2]  A breakdown of the amounts due and owing to Plaintiff is as follows as outlined in the Affidavit of Ron McMahan at Paragraph 10:

---

[2] As referenced in the Complaint, the amount in controversy exceeds $75,000 given the underlying principal balance of the loan for the real estate at issue was just under $100,000 in 2005, value which has appreciated since that time.  *See U.S. Bank Nat'l Ass'n v. Smith*, 693 F. App'x 827, 828-30 (11th Cir. 2017) (unpublished) (explaining that in "a residential foreclosure action" that "we measure the amount in controversy 'by the value of the object of the litigation'").  Furthermore, particularly when including attorney's fees which are required to be paid under the terms of the Mortgage, the outstanding loan balance independently exceeds the $75,000 amount in controversy. *See Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019) ("Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.").

| | | |
|---|---|---|
| a. | Unpaid Principal Balance: | $41,638.54 |
| b. | Accrued Interest through December 6, 2022: | $7,465.94 |
| c. | Unpaid Late Charges: | $656.40 |
| d. | Property Preservation Expenses: | $11,531.12 |
| e. | Tax Advances: | $2,338.94 |
| f. | Senior Lien Advance: | $2,683.94 |
| g. | Lender Placed Insurance: | $327.11 |
| h. | Administrative Fee: | $280.00 |
| i. | Prior Servicer Corporate Advance Balance: | $1,940.86 |
| j. | Negative Escrow Balance: | $4,916.68 |
| k. | Payoff Charges: | $120.00 |
| l. | Suspense Balance (credit): | -$15.46 |

Interest will continue to accrue at the rate of $8.30 per day from the date of December 7, 2022 forward.  *See* Affidavit of Ron McMahan ¶¶ 10-11.

14.     The respective tax payment history from Bernalillo County is enclosed herewith as Exhibit 2.  The documentation evidencing the above-referenced payment of a $2,683.94 senior municipal lien is enclosed herewith as Exhibit 3.[3]

15.     Due to serious problems with the condition of the Property discovered following the Decedent's passing that gave rise to numerous municipal-code compliance problems, the above-referenced preservation expenses for the Property have been significantly greater than in a typical foreclosure involving a vacant property.  *See generally* Exhibit 4.  For instance, beyond

---

[3] By statute, various municipal liens have super priority preventing them from being foreclosed upon even if they were created after the mortgage interest at issue.  *See* NMSA 1978, § 3-36-2 ("All municipal liens filed in conformity with Sections 3-36-1 through 3-36-6 NMSA 1978 shall be first and prior liens on the property subject only to the lien of general state and county taxes.").

typical preservation costs for any vacant property, in the range of $10,000 was expended between the following items: (a) extensive work to bring the property structure and exterior up to code, *see* Exhibit 4 at 1-4 (recounting expenses); (b) gas vendor work to resolve problems with inoperable gas services on the property and associated safety inspections in the amount of $920.82, *see id.* at 5; (c) electrical vendor work to reactivate power at the property and associated safety inspections in the amount $1,540.00, *see id.* at 6.

16.     To date, the following Defendants have not filed an answer in this lawsuit after service upon them: (1) Defendant Robin M. McCafferty (Deceased); (2) The Unknown Heirs, Legatees and Devisees of Robin M. McCafferty; and (3) Capital One Bank (USA) N.A.  *See* Clerk's Entry of Default at 1, filed on December 29, 2022 (Doc. 13).

17.     Disclaimers of interest evidencing their lack of opposition to the foreclosure proceeding forward were executed by the Decedent's surviving siblings, in particular: (a) Patricia McCafferty; (b) William McCafferty; (c) Margaret McCafferty; and (d) Michael McCafferty, filed of record in this proceeding.  *See* Various Disclaimers, filed May 16, 2022 (Doc 1-3).  These are the only known heirs of Decedent.  *See* Complaint ¶ 5; Declaration of Ryan Walters ¶¶ 3-6, filed July 13, 2022 (Doc. 3-1).

18.     A Notice of Filing of Disclaimer of Interest in Real Property was filed by Citibank, N.A. on August 8, 2022, *see* Doc. 5.  Any interest that Defendant Citibank, N.A. may have claimed in the Property relates to a Mortgage, recorded on August 17, 2007, as Instrument Number 2007119388 in the Official Records in Bernalillo County, New Mexico.  The recordation of this contract postdates the recordation of the Mortgage at issue in this foreclosure, which was recorded in 2005.  *See* Doc. 1-5.

19.     Any interest that Defendant Capital One Bank (USA), N.A. may claim in the Property relates to a Judgment entered on February 21, 2012, a judgment interest that appears to

have never been recorded such that under New Mexico law no lien arose against the real estate at issue in this lawsuit.

20.    The Mortgage provides for a redemption period of one month. *See* Mortgage ¶ 23, at 6.

21.    Wilmington Savings has incurred at least $12,221 in attorney's fees in pursuit of this foreclosure action, $956.03 in gross receipts tax associated with attorney's fees, and $402 in recoverable costs in the form of the complaint filing fee. *See* Declaration of Ryan M. Walters ¶¶ 5-7 (Exhibit 5). Wilmington Savings also seeks further the attorney's fees it will incur through the conclusion of this action in the amount of at least $1,500 and related gross receipts tax of $116.25. *See id.* ¶ 5.

## II.    STANDARD OF REVIEW ON MOTIONS FOR DEFAULT JUDGMENT

Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Resolution of a plaintiff's claims by way of a default judgment adjudicates the merits of the claims in the plaintiff's favor. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("As such, it is a merits argument foreclosed by the district court's default judgment.").

After entering default judgment, a district court takes all of the well-pleaded facts in a complaint as true when evaluating damages. *See United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished) ("[W]hen a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proven in a supplemental hearing or proceeding."). "If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation,

the judgment generally will be entered for that amount without any further hearing." *Id.* (alteration in original). A court may enter a default judgment for a damage award "without a hearing" if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983). The Tenth Circuit has recognized that a federal district court is not required to hold a hearing to determine amounts owed on a promissory note as those amounts are sums capable of mathematical calculation:

> The government, however, is correct in its concise and well-reasoned brief, where it notes that the claim for damages in this case was not indefinite or uncertain. Instead, once the facts regarding Mr. Craighead's liability on the notes were taken as true, all the court was required to do was calculate the amounts owed on the promissory notes and the interest.

*Craighead*, 176 F. App'x at 925.

## III.   ARGUMENT

### A.   By Failing to Answer, All the Defendants Are in Default.

As detailed above, Decedent and any successors to her interest in the Property have failed to perform on their obligations under the Note and Mortgage. Additionally, the following Defendants have defaulted by failing to file an answer: (1) Defendant Robin M. McCafferty (Deceased); (2) the Unknown Heirs, Legatees and Devisees of Robin M. McCafferty (Deceased); and (3) and Capital One Bank (USA) N.A. *See* Fed. R. Civ. P. 55(a). Because these Defendants have failed to file an answer denying Plaintiff's allegations, the allegations are deemed admitted. *See Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually.").

Thus, all the allegations in the Complaint filed in this matter must be taken as true and a default judgment entered against these Defendants based on their failure to respond in this matter.

As described above, Citibank and the four surviving siblings of Decedent have all disclaimed any interest in the Property.

**B.    The Amount of Damages Under the Loan at Issue Is Readily Capable of Mathematical Calculation.**

As the Tenth Circuit has recognized, a court may enter a default judgment for a damage award "without a hearing" if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Venable*, 721 F.2d at 300.  The Tenth Circuit has also expressly concluded that a loan document such as a promissory note falls within this category where no hearing is necessary given the readily ascertainable nature of the amount owed.  *See Craighead*, 176 F. App'x at 925.  Consequently, the Court may without hearing enter an in-rem judgment in the amount of: (1) the total outstanding loan balance detailed above of $73,839.07; and (2) per diem interest in the amount of $8.30 per day from the date of December 7, 2022 forward until the property is sold at foreclosure auction.  *See* Undisputed Material Facts Nos. 12 to 13.

**C.    For Purposes of Execution on the Judgment, the Court Should Permit the Property to Be Sold at Foreclosure Auction by a Special Master.**

As outlined above, all interest in the Note and Mortgage has been assigned to Wilmington Savings.[4]  Under New Mexico law, a promissory note indorsed in blank can be transferred by possession of the note alone.  *See* NMSA 1978, § 55-3-205(B); *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 24, 320 P.3d 1 ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").    In an unpublished opinion, the Tenth Circuit recently affirmed these same propositions when evaluating

---

[4] Notably, under New Mexico law, proof of assignment of a mortgage or mortgage is not necessary because the right to foreclose the mortgage follows the respective promissory note.  *See Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶ 22, 356 P.3d 1102 ("Because we have concluded that the right to foreclose the mortgage automatically follows the right to enforce the note, and Flagstar established that it had the right to enforce the note, Ms. DeNiro's statements about ownership of the mortgage were not material to the issue of Flagstar's right to file this foreclosure action.").

New Mexico law in a foreclosure dispute. *Wilmington Sav. Fund Soc'y FSB v. Hutchins*, No. 21-2094, 2022 U.S. App. LEXIS 9728, at *7 (10th Cir. Apr. 12, 2022) (unpublished) ("Here, Wilmington Savings possessed Neill's promissory note, which was indorsed in blank and attached to the initial complaint. Thus, Wilmington Savings was entitled to enforce the note and recover the debt."), *no cert. history*.

Under these authorities, because Wilmington Savings' counsel is in possession of the original Note that has been indorsed in blank, Wilmington Savings can enforce the Note. *See* Undisputed Material Facts Nos. 3 to 6. Furthermore, by virtue of the recorded assignments of the Mortgage, all interest in the Mortgage has been transferred to Plaintiff. *See* Undisputed Material Facts Nos. 3 to 6.

Upon default under a note and Mortgage, the holder of the Mortgage is entitled to pursue suit on the note and foreclose on the Mortgage based on the non-payment of the borrower's obligations. *See Kepler v. Slade*, 1995-NMSC-035, ¶ 7, 119 N.M. 802 ("Under the traditional common law rule, upon default by the mortgagor, a mortgagee has independent remedies which he or she may pursue. The mortgagee may sue either on the note or foreclose on the mortgage, and may pursue all remedies 'at the same time or consequently.'"). A promissory note and a mortgage are simply contract instruments at their core, and Borrower has breached those contracts by failing to make payments on their obligations. *See Griffith v. Humble*, 1942-NMSC-006, ¶¶ 6-12, 46 N.M. 113, 122 P.2d 134 (1942). The signatories to those agreements agreed to permit recovery on the Note and foreclosure of the Mortgage if they defaulted. *See* Note at 1-2; Mortgage ¶ 22.

Furthermore, the standard course of action in the foreclosure context is for the interests of any junior lien or interest holders to be extinguished through the foreclosure process. *See City of Albuquerque v. Middle Rio Grande Conservancy Dist.*, 45 N.M. 313, 115 P.2d 66, 67 (1941) ("A

foreclosure sale under a paramount lien must necessarily extinguish all other liens—otherwise the so-called paramount lien is not actually a paramount lien.").  Because Plaintiff's Mortgage recorded in 2005 covering the Property predates any claimed interest of Capital One Bank from its judgment obtained in 2012, *see* Undisputed Material Fact No. 19, the Mortgage is paramount by virtue of standard priority principles governing seniority of liens, *see Kuemmerle v. United N.M. Bank at Roswell, N.A.*, 1992-NMSC-028, ¶ 7, 113 N.M. 677, 831 P.2d 976 (explaining that the "common law doctrine of 'first in time, first in right' controls the priorities between the parties" when it comes to a dispute as to the "priority between" conflicting "lien[s]").  Pursuant to these principles, "[t]he rights of a creditor are fixed by the condition of affairs as they existed at the time of inception of [the] lien."  *Sun Country Sav. Bank of N.M., FSB v. McDowell*, 1989-NMSC-043, ¶¶ 22-23, 108 N.M. 528, 775 P.2d 730 (second alteration in original).  To the extent there are any excess proceeds from a foreclosure auction beyond the amount of Plaintiff's judgment, Wilmington Savings has no opposition to any lienholders asserting whatever rights they may have to such proceeds.

To facilitate the foreclosure, Plaintiff further requests the appointment of a special master to conduct the foreclosure auction to satisfy the outstanding amounts owed on the Note and Mortgage.  This course of action is the standard procedure for a New Mexico foreclosure auction. *See, e.g., Fidelity Nat'l Bank v. Lobo Hijo Corp.*, 1979-NMCA-045, ¶¶ 39-41, 92 N.M. 737, 594 P.2d 1193 ("The decree of foreclosure and the trial court's order approving the special master's sale are affirmed.").  Plaintiff will submit in connection with this motion an appropriate order appointing a special master who will conduct an auction and provide a report of the sale—after appropriate publication as specified in NMSA 1978, § 39-5-1—for the Court's approval.

**D.   Wilmington Savings Is Further Entitled to Recovery its Reasonable Attorney's Fees and Costs Incurred in Pursuing this Foreclosure Suit.**

Wilmington Savings should also receive an award of its attorney's fees and recoverable costs. Attorney's fees are specifically recoverable under the respective mortgage document relating to the real estate at issue in this foreclosure action. *See* Mortgage ¶ 21 ("Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.").

Wilmington Savings seeks its historic fees in the amount of $12,221 in attorney's fees and related gross receipts tax of $956.03, and its reasonably expected future fees as discussed above. *See* Undisputed Material Fact No. 21. In addition, Wilmington Savings under Rule 54 of the Federal Rules of Civil Procedure requests $402 in court costs related to the complaint filing fee. Filing fees required by the clerk's office are authorized by 28 U.S.C. § 1920(1) as a recoverable cost item. These fee and cost amounts are supported by the enclosed declaration of counsel included as Exhibit 5 and are further evidenced by the fee statements enclosed as Exhibit A to that declaration.

"In a diversity action, the right to recover attorneys' fees as a part of costs depends on state law." *Rockwood Ins. Co. v. Clark Equip. Co.*, 713 F.2d 577, 579 (10th Cir. 1983). Attorney's fees are allowed under New Mexico law if permitted by contract. *See, e.g., In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 2007-NMCA-007, ¶ 19, 140 N.M. 879 ("A contract providing for attorney fees is enforceable."). In awarding attorney's fees, a court "should utilize the lodestar method as a starting point for its calculation." *Rio Grande Sun v. Jemez Mts. Pub. Sch. Dist.*, 2012-NMCA-091, ¶ 21, 287 P.3d 318. "A lodestar is determined by multiplying counsel's total hours reasonably spent on the case by a reasonable hourly rate." *Id.* ¶ 20. Following a lodestar calculation, New Mexico courts also consider a variety of other factors in determining the reasonableness of attorney's fees, including the following:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)     the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer performing the services; and

(8)     whether the fee is fixed or contingent.

*Behrens v. Gateway Court, LLC*, 2013-NMCA-097, ¶ 33, 311 P.3d 822 (internal citation omitted).

As explained in the declaration of counsel enclosed herewith, Mr. Walters is skilled foreclosure counsel who has handled in excess of a hundred foreclosure disputes during his practice history—including contested residential foreclosures and various commercial foreclosure disputes. *See* Declaration of Ryan M. Walters ¶ 10 (Exhibit 5). After graduating from law school in 2011, Mr. Walters served as a law clerk for the 2011 to 2012 term for U.S. District Court Judge James O. Browning. *See id.* ¶ 13. He subsequently worked as a litigation associate at the Am Law 200 firm Lewis Roca Rothgerber Christie LLP and the Am Law 100 firm Lewis Brisbois Bisgaard & Smith LLP. *Id.* He has participated in numerous jury and bench trials, including for contested collection cases. *Id.* He is presently a board member of the New Mexico State Bar's Business Law section. *Id.* He has handled foreclosure lawsuits for this client in this lawsuit and its various affiliate entities since 2014 and has been the primary attorney managing this client relationship for over sixty-five foreclosure disputes. *Id.* ¶¶ 12-13. Proper compliance with federal and state foreclosure procedures requires significant skill on the part of counsel. *Id.* ¶ 9.

## IV.    CONCLUSION

Consequently, the Court should enter a default judgment on the claims Plaintiff has asserted against The Estate of Robin M. McCafferty (Deceased), the Unknown Heirs, Legatees and Devisees of Robin M McCafferty, as well as Capital One Bank (USA) N.A. so that a special master may be appointed in this matter to proceed with a foreclosure sale of the Property.  These Defendants have failed to answer in this matter, and for the reasons stated above it is proper for the Court to order foreclosure.  All other persons who may claim an interest in the Property have disclaimed such interest as described above.

Respectfully submitted,

**JENNINGS HAUG KELEHER MCLEOD LLP**

By: */s/ Ryan M. Walters*
Ryan M. Walters
201 3rd Street NW, Suite 1200
Albuquerque, NM  87102
(505) 346-4646 telephone
rmw@jhkmlaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of February 2023, I filed the foregoing through the Odyssey File & Serve System which effectuated service on all counsel of record electronically via the CM/ECF system.  I further certify that the following parties were served via U.S. mail on the 7th day of February 2023:

Capital One Bank (USA)
c/o Agent for Service of Process
1680 Capital One Drive
McLean, VA 22101-3491

*/s/ Ryan M. Walters*
Ryan M. Walters